In this cause a motion to strike the bill of complaint was made on behalf of the defendants, Public Service Co-ordinated Transport, Incorporated, and Stanislaw Kasprzak, administrator,c. A petition was filed and an order to show cause made thereon seeking to restrain the defendant Public Service from taking possession of or operating complainant's bus line pending final hearing of the cause. The bill as amended sets forth that the complainant was engaged in operating a bus line between Gloucester Heights and Camden, New Jersey, having complied with the legal requirements for the operation of such line, and that one of complainant's buses was involved in an accident which caused the death of one John Kasprzak, resulting in a suit for damages by his administrator in the Camden county circuit court and the recovery of a judgment against the complainant herein for $9,100.52, damages and costs; that execution was issued on this judgment out of said court to the sheriff of Camden county on May 22d 1934, and that the sheriff levied upon the following property:
"All the right, title and interest, credits, moneys, and effects, goods and chattels, lands and tenements, more particularly all the right, title and credits which the Century Transit Company may have on the franchise to operate buses between Camden and Gloucester Heights, now in the hands of the Century Transit Company, and the municipal consents of the city of Camden, and the township of Haddon." *Page 522 
And that after such levy the sheriff attempted to advertise in accordance with the statute, the property levied upon, for sale on June 8th, 1934. The public notices of such sale set forth that by virtue of the writ of fieri facias issued out of the circuit court, the goods as levied upon and as hereinbefore set forth, would be sold at public vendue on Friday, June 8th, 1934, "at 11:00 o'clock D.S.T. in the ____ noon of said day," and were posted in four of the public places of the city of Camden, one near Reading Ferry Garage, Front and Kaighn avenue, and one each in the sheriff's, register of deeds' and county clerk's offices. The property was sold for $9,500 to Nathan Blank, who assigned his bid to the defendant Public Service, and on June 13th, 1934, the sheriff executed and delivered a bill of sale to Public Service, which bill of sale purported to convey the property levied upon, and after the making of the bill of sale, the sheriff returned his process of execution to the said circuit court. The Public Service filed an application with the board of public utility commissioners of the State of New Jersey, requesting approval of the sale which, pending the proceedings in this cause, has been approved by the commissioners.
On August 31st, 1933, prior to the bill of sale made by the sheriff to Public Service, the complainant sold to Gloucester Heights Bus Company, Incorporated, its franchises and municipal consents, and on February 28th, 1934, executed to Gloucester Heights Bus Company, Incorporated, a bill of sale for all the right, title and interest of complainant in and to said franchises and municipal consents. On January 31st, 1934, Gloucester Heights Bus Company, Incorporated, made application to the board of public utility commissioners for consent to the transfer of these municipal consents, which application was heard by the board and denied.
The bill further alleges that the levy under the execution against complainant was made by one Winfield S. Clark, an alleged deputy of the sheriff, and who also conducted the alleged sale under the execution, and avers that Clark was never deputized by the sheriff to make the levy. The complainant avers that the sale is null and void because Clark *Page 523 
was never legally deputized to make such levy and sale and because such sale was advertised for eleven o'clock, daylight saving time, in the ____ noon, a meaningless phrase which did not apprize potential purchasers of the hour at which the said sale was to be held, and that such sale was held at ten o'clock, eastern standard time, an hour prior to the time at which it was advertised to be held, and that the bill of sale given by the sheriff to Public Service is also null and void because the sheriff had no legal right to accept an assignment of the bid and had no legal right to make any bill of sale other than to the purchaser at said sale and because of the return of the execution by the sheriff to the circuit court; that complainant has no remedy at law and seeks to have the sheriff's sale declared null and void for the reasons set forth and to have the bill of sale executed by the sheriff to Public Service canceled and declared to be null and void and to enjoin Public Service from operating such bus line under the franchises so purchased at sheriff's sale.
An answer and counter-claim was filed by Gloucetser Heights Bus Company, Incorporated, which admits the allegations in the complainant's amended bill and seeks the same relief against Public Service as is sought by complainant.
Public Service paid over to the sheriff $9,500, the amount of its bid at the sheriff's sale, which amount of money is still retained by the sheriff, although the bill of sale was delivered to the Public Service. The Public Service was temporarily restrained from taking possession or operating the complainant's bus line pending the return of the order to show cause, and complainant continued to operate the line.
The motion to strike the bill is based on want of equity. It is contended that the board of public utility commissioners having given its consent to the operation of the bus line by Public Service, this court is without jurisdiction to pass upon the validity of the sale by the sheriff of this franchise and of the bill of sale executed and delivered by him to Public Service. With this contention I do not agree; the board of public utility commissioners did not have jurisdiction to pass upon the validity of the sheriff's sale. *Page 524 
The only public interest in the sale of the bus franchise is that the purchaser be willing and able to operate bus lines in an efficient manner and this policy is served by requiring the transfer to be approved by the utility commissioners. The holder of the franchises may sell them to any one he selects, and for any price; or a franchise may be sold on execution. Hart v.Seacoast Credit Corp., 115 N.J. Eq. 28. However, the board of public utility commissioners is not empowered to pass upon the validity of a sale by the sheriff where such sale is attacked because of failure to comply with the statute relating to advertising of sales by the sheriff, nor has it power to declare that a bill of sale executed and delivered by the sheriff to the purchaser by virtue of such sale, is void and of no effect and require its surrender and cancellation. The execution in this cause issued out of the circuit court, which court has no jurisdiction to declare a sale made thereunder to be void and a bill of sale of no effect after the execution is returned by the sheriff; nor can it decree the cancellation of a deed or bill of sale in such circumstances.
The court of law out of which the process of execution has issued possesses a summary jurisdiction to control its own process; that jurisdiction is of an equitable nature for the purpose of preventing its own judgments and processes from being the means of working injustice, and that jurisdiction of the law court exists until the process has been finally executed. After the process has been finally executed and the law court has thereby become unable to grant the relief sought, this court may, in proper circumstances, afford a remedy. Margate Co. v. Hand,86 N.J. Eq. 314; Ludlam v. Pennsylvania Realty Co., 83 N.J. Eq. 130.
This court therefore has jurisdiction to entertain the bill of complaint in this cause.
Several grounds are urged in the bill to set aside the sale, one of which was the allegation that Clark, the deputy, was never legally deputized to make either the levy or the sale; without at this time passing upon the legality of his status, there are other grounds which seem to me entirely sufficient to hold the bill, in respect to the advertisement of sale. *Page 525 
The statute relating to advertisements of sales of goods and chattels under execution provides that "no sale of any goods or chattels shall be made by virtue of any execution, unless previous notice of the time and place of such intended sale shall be given by the officer making the levy, by advertisements, signed by himself, and put up in three or more of the most public places in the township where they were taken, at least five days before the time appointed for sale." 2 Comp. Stat. p. 2254 ¶31. I think this statute could be modernized to meet present day conditions, particularly where there is a sale of valuable personal property, in this case a valuable bus franchise, and where newspaper advertising is generally the rule in selling such property if done at public sale, as well as the posting of advertisements. It is difficult to adjust the conditions surrounding the sale of the franchise to this statutory proceeding for advertisement. The question as to whether such advertisement was made in accordance with the statute by being posted in three or more of the most public places is a fair matter to be determined upon final hearing. However, I am directing my attention to the requirement of this statute that notice of the time and place of such intended sale shall be given by the sheriff. In the advertisement, as I have noted, the time was set forth at "11 o'clock D.S.T. in the ____ noon." The statute relating to the sale of lands taken under execution directs that such sale shall take place between the hours of twelve and five o'clock in the afternoon (2 Cum. Supp. Comp.Stat. p. 3137 ¶ 1), but so far as the sale of personal property is concerned, there is no restriction as to the hours within which such sales may be held, so that it is especially essential that the advertisement should state in unmistakable language the hour when such sale shall take place, and whether in the forenoon or the afternoon. Therefore, the advertising in the instant case was defective in at least this respect.
The further question arises as to the hour fixed for the sale, which is denominated as eleven o'clock daylight saving time. It is contended that this term "D.S.T." is generally understood to be daylight saving time; however, there is no statute *Page 526 
in this state which establishes so-called daylight saving time, even if the denomination "D.S.T." were sufficient to be construed to mean daylight saving time, which makes such time legal. Our statute provides:
"1. That the standard time of the State of New Jersey shall be the time of the seventy-fifth meridian west from Greenwich, and that the time named in any of the statutes of this state and in public proclamations, in the rules and orders of the senate and general assembly, in the decrees and orders of the courts and in all notices and advertisements in any legal proceedings, shall be deemed and taken to be the standard time aforesaid.
"2. That the time tables of all public conveyances within this state shall conform to the standard time aforesaid, and that the time named in any notice, advertisement or contract shall be deemed and taken to be the said standard time, unless it be otherwise expressed." 4 Comp. Stat. p. 4879.
It is argued that in many of the municipalities of this state, daylight saving time has been established by ordinance, but I cannot determine upon a motion to strike the bill, where the facts as set forth in the bill are to be taken as true, that daylight saving time is so universally used and understood that the court is called upon to recognize it as legal time as relating to the present case. Many people are confused by so-called daylight saving time, and where valuable property is being sold under an execution the officer selling such property should strictly comply with the statute. There would be no confusion if all legal sales were advertised to take place at the hour fixed, eastern standard time, followed by an explanatory bracket giving the hour, daylight saving time, where such latter time may be used locally. It is quite obvious that persons who may be interested in attending a sale, especially in a community where daylight saving time is not established by ordinance, or otherwise, might be confused as to when such sale would actually take place. A debtor against whom an execution is issued is entitled to have his property, if sold, advertised as prescribed by law, otherwise he is being deprived of his property without due process.
The motion to strike the bill will be dismissed. *Page 527 
The Public Service will be restrained from taking possession or operating the bus line, pending the final hearing in this cause, as long as the same is being operated by the defendant Century Transit Company. If it should be represented to the court that there is a danger of the forfeiture of the franchise by reason of the failure of Century Transit Company to operate the same, application may be made to the court for a modification of the restraint.